# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **XINGZHONG ("FRANK") SHI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-13-S-327-NE** |
| | ) | |
| **ALABAMA A & M UNIVERSITY,** | ) | |
| **TRENT MONTGOMERY,** | ) | |
| **DANIEL WIMS, and DR.** | ) | |
| **ANDREW HUGINE, JR.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Xingzhong ("Frank") Shi, who is proceeding *pro se*, initiated this action on February 19, 2013, by filing an application under § 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), for appointment of an attorney.[1]  The court denied plaintiff's request for appointment of an attorney and ordered plaintiff to file "an amended complaint, setting forth all claims he wishes to assert against all defendants, referring to the federal statutes he relies upon to support each of his claims, and complying with Rule 8 of the Federal Rules of Civil Procedure."[2] Plaintiff complied with that order by filing an Amended Complaint on April 15,

---

[1] Doc. no. 1.

[2] Doc. no. 2, at 1.

2013.[3]  The case presently is before the court on defendants' motion to dismiss the Amended Complaint.[4]  Plaintiff also filed a response to the motion to dismiss, purporting to add an additional claim and a new defendant.[5]  The court will construe that response as a motion for leave to amend plaintiff's Amended Complaint.  So construed, the motion is due to be granted.  Defendants' motion to dismiss will be granted in part and denied in part.

## I. STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6):  Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] Doc. no. 7.

[4] Doc. no. 15.

[5] Doc. no. 21.

(2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*., at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But

where the well-pleaded facts do not permit the court to infer more than
the mere possibility of misconduct, the complaint has alleged — but it
has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule
Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to
dismiss can choose to begin by identifying pleadings that, because they
are no more than conclusions, are not entitled to the assumption of truth.
While *legal conclusions* can provide the framework of a complaint, they
must be supported by factual allegations.  *When there are well-pleaded
factual allegations*, *a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

"'*Pro se* pleadings are held to a less stringent standard than pleadings drafted

by attorneys' and are liberally construed."  *Bingham v. Thomas*, 654 F.3d 1171, 1175

(11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th

Cir. 1998)).

## B.    Federal Rule of Civil Procedure 12(b)(1):    Lack of Subject Matter Jurisdiction

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear

only those cases within the judicial power of the United States as defined by Article

III of the Constitution,' and which have been entrusted to them by a jurisdictional

grant authorized by Congress."  *University of South Alabama v. The American

Tobacco Co*., 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d

1365, 1367 (11th Cir. 1994)).  Accordingly, an "Article III court must be sure of its

own jurisdiction before getting to the merits" of any action.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).

A motion to dismiss a case for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).[6]  When ruling upon a Rule 12(b)(1) motion asserting a lack of jurisdiction on the face of the plaintiff's complaint, as with a Rule 12(b)(6) motion, the court must consider the allegations of the complaint as true.  *See Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981)[7] (citations omitted).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff's Amended Complaint asserts constitutional claims through the remedial vehicle of 42 U.S.C. § 1983,[8] as well as statutory claims pursuant to § 706(f)

---

[6] Rule 12(b)(1) provides that "a party may assert the following defenses by motion:  (1) lack of subject-matter jurisdiction. . . ."  Fed. R. Civ. P. 12(b)(1).

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f),[9] against the following defendants: Trent Montgomery, Dean of the College of Engineering, Technology, and Physical Sciences at Alabama A & M University ("A & M"); Daniel Wims, Provost and Vice-President of Academic Affairs at A & M; Andrew Hugine, A & M's President; and the A & M University Grievance Committee. All of plaintiff's claims arise out of his former employment with A & M.[10] Those claims are discussed in more

---

considered to be a statute of the District of Columbia.

"Title 42 U.S.C. § 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions. 42 U.S.C. § 1983. Section 1983 is merely a vehicle by which to bring these suits; it does not create any substantive federal rights." *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007) (citing *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996)).

[9] 42 U.S.C. § 2000e-5(f) provides, in pertinent part, that

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.

42 U.S.C. § 2000e-5(f)(1).

[10] *See generally* Amended Complaint.

detail below.

## A.    Claim 1

For his first claim, plaintiff asserts that defendant Trent Montgomery placed him on Administrative Leave Without Pay between August 25 and December 31, 2011, because plaintiff had questioned Montgomery at a college-wide meeting on August 15th of that year.  According to plaintiff, Montgomery's actions deprived him of his "rights as an Associate Professor and a legal Alabama state employee."[11]  Plaintiff also alleges that Montgomery's "decision was baseless, and arbitrary, or conscience shocking, in a constitutional sense.  It is a violation of the substantive due process simpliciter [sic]."[12]  Plaintiff asserts this claim under 42 U.S.C. § 1983.

## B.    Claim 2

For his second claim, plaintiff asserts that defendant Trent Montgomery illegally appointed an individual named Venkata Atluri as the Interim Chair of the Computer Science Department at A & M during the winter of 2010.[13]

> That appointment was an act of power abusing, violating AAMU regulations for appointing interim chair and depriving the rights of other CS faculty members (including me) to be appointed or voted for that position.

---

[11] Amended Complaint, at 4.

[12] *Id.*

[13] *Id.* at 5.

That appointment was discriminatory since Atluri only received a Ph.D in Zoology in India and a MS in [Computer Science] degree from [A & M] with an Associate Professor title, while Dr. Jian Fu (from China) received a Ph.D in [Computer Science] from UAH with a Full Professor title.

The appointment was discriminatory since I (from China) received a Ph.D degree in Applied Math from UAH with a minor in [Computer Science], 5-years of hands-on industry experience doing software maintenance & development and with an Associate Professor title.

That appointment is a violation of the substantive due process simpliciter [sic].[14]

Plaintiff also asserts that Montgomery did not listen to his opinions, or those of other Computer Science Department faculty and staff, during and after a meeting held on January 5, 2011, despite the fact that most Computer Science faculty members expected to be able to vote on who would serve as Interim Chair of the department.[15] Finally, plaintiff asserts that Montgomery ignored a letter sent to him during the winter of 2012 by all Computer Science Department faculty and staff, asking for a vote on the position of Interim Chair.[16]  Plaintiff asserts this claim through 42 U.S.C. § 1983, which he refers to as addressing "civil action for deprivation of rights," as well as under § 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f).

---

[14] *Id.* (alterations supplied).

[15] *Id.*

[16] *Id.*

**C.     Claim 3**

For his third claim, plaintiff asserts that the A & M University Grievance Committee neglected its duty to properly handle his complaint against Montgomery's decision to place him on Administrative Leave Without Pay.[17]  According to plaintiff:

> The negligence of [the Grievance Committee's] duty to handle my complaint deprived my rights to seek redress (justice and fairness and worker rights), violating [A & M] regulations for handling grievance.
>
> The negligence of its duty was conscience shocking, in a constitutional sense.
>
> The negligence of its duty is a violation of the substantive due process simpliciter [sic].[18]

Plaintiff alleges this claim through the remedial vehicle of 42 U.S.C. § 1983, as it asserts a "[c]ivil action for deprivation of rights."[19]

**D.     Claim 4**

For his fourth claim, plaintiff asserts that defendant Daniel Wims terminated his employment in December of 2011 "without stating any reason."[20]  According to plaintiff, Wims' decision

> was an act of discrimination, power abusing, and retaliation against me for protesting his appointment of [Trent Montgomery] as the new dean

---

[17] Amended Complaint, at 6.

[18] *Id.* (alterations supplied).

[19] *Id.* (alteration supplied).

[20] *Id.* at 7.

of the newly re-organized college, and an act of endorsing [Montgomery's] wrongdoings.

That decision was arbitrary, or conscience shocking, in a constitutional sense. . . .

That decision is a violation of the substantive due process simpliciter.[21]

Plaintiff also asserts that the termination decision

completely deprived ALL my worker/civil rights as an Associate Professor at [A & M] and a legal Alabama state employee, including the right to work and the right to receive RETIREMENT BENEFIT (if one works for 10 or more years at AAMU), which is so far the main source of income for my wife and me after my retirement.[22]

Plaintiff bases this claim upon 42 U.S.C. § 1983 and § 706(f) of the Civil Rights Act.

Plaintiff also provided an attachment with some additional allegations to support Claim 4. He asserts that he never received any communication from the Grievance Committee about its investigation into his complaint about being placed on administrative leave without pay. He claims that he did nothing wrong, except to complain about the previous Dean's wrongdoings, and to protest the appointment of Montgomery as the new Dean (*i.e.,* the Interim Chair of the Computer Science Department). He had received very good job performance reviews, and the Computer Science Department had a shortage of qualified instructors, at the time he was placed

---

[21] *Id.* (alterations supplied).

[22] *Id.* (alteration supplied).

on administrative leave and eventually terminated.   In fact, he had received a

promotion from Assistant to Associate Professor only eighteen months before being

terminated.[23]   According to plaintiff, he had been sending emails complaining about

the former Dean's behavior, and calling for Montgomery's resignation, since April of

2011, but no one ever responded to his correspondence or informed him that it was

inappropriate.   Plaintiff also complains that A & M selected an African-American

female employee to receive tenure over him in 2007, because that decision prevented

plaintiff from gaining tenure when he received a promotion in 2010.[24]

## E.   Claim 5

For his fifth claim, plaintiff asserts that Wims and Hugine "re-organized ALL

[A & M's] schools and departments in 2011, DIS-ALLOWING ANY DISCUSSIONS

among lower level administrators or faculty/staff."[25]   According to plaintiff, the

reorganization was "DICTATORIAL and an act of POWER ABUSING, violating one

of the most important US values — democracy.   That decision was arbitrary, or

conscience shocking, in a constitutional sense."[26]  Plaintiff also asserts that Wims and

Hugine are "UNWILLING to listen to others; they seem to do whatever they want to,

---

[23] Amended Complaint, at 8.

[24] *Id.* at 9.

[25] *Id.* at 11 (alteration supplied, capitalization in original).

[26] *Id.* (capitalization in original).

never caring about others' civil rights."[27]  Plaintiff bases this claim upon 42 U.S.C. § 1983.

## F.    Demands

At the conclusion of his claims, plaintiff makes the following demands:

> I am making a request for a jury of my peers to hear my case.  I am requesting the jury and the court to investigate (1) the legitimacy of the dean T. Montgomery's decision to place me on "Administrative Leave With Pay," (2) [A & M] Grievance committee's negligence of its duty to handle my officially submitted and accepted complaint, and (3) the Provost D. Wims' decision to terminate my employment.

> I am asking that the jury and the court compensate me for all my financial loss from being denied due process under law and for the mental suffering of me and my family.  Should the verdict be in my favor, I am also asking the jury and the court to direct the defendants to publicly apologize to me for their wrongdoings.[28]

## G.    Proposed New Claim 6

In plaintiff's response to defendants' motion to dismiss, which the court has

construed as a motion for leave to amend plaintiff's Amended Complaint, plaintiff

seeks to add a sixth claim against a new defendant, the Alabama A & M Board of

Trustees ("the Board"), as well as against all the defendants previously named in

claims 1-5.  The new claim essentially seeks to hold the Board liable for all of the

wrongdoings alleged in plaintiff's previous claims.   More specifically, plaintiff

---

[27] *Id.* (capitalization in original).

[28] *Id.* at 13 (alteration supplied).

alleges:

**Events:**

1. [Montgomery] (*baselessly*) placed me on "Administrative Leave with Pay" for 4+ months (8/25/2011-12/31-2011) sorely [sic] due to my behavior (questioned him a couple of issues) at the college-wide meeting on 8/15/2011, depriving ALL my rights as an Associate Professor and a legal Alabama state employee.  (As I stated in claim 1 in my amended complaint).

2. [Montgomery] *illegally* appointed Venkata Atluri as the interim chair of the [Computer Science] dept. in winter 2010 (As stated in claim 2 in my amended complaint.)

3. [The A & M Grievance Committee] *neglected its duty* to handle my officially submitted and accepted complaint against the dean's decision to place me on "Administrative Leave with Pay" (and the intended complaint against the Provost's decision).  (As stated in claim 3 in my amended complaint.)

4. [Wims] (*discriminatorily*) terminated my employment in Dec 2011 without stating any reason.  (As stated in claim 4 in my amended complaint.)

5. [Wims and Hugine] reorganized [A & M's] schools and departments in 2011, dis-allowing ANY discussions among lower level administrators or faculty/staff.  (As stated in claim 5 in my amended complaint.)

**Claim:**

1. [Montgomery's, Wims', and Hugine's] decisions and [the Grievance Committee's] negligence of its duty were baseless, or discriminatory, or arbitrary or conscience shocking, in a constitutional sense.

2.   They directly violated related [A & M] regulations and guidelines in the [A & M] Faculty/Administrative Staff Handbook as I stated in my amended complaint.

3.   They were violations of the substantive due process simpliciter [sic].

4.   They violated the statutes § 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), or 42 U.S.C. § 1983, or Ala. Code § 16-49-21, or Ala. Code § 16-49-22.[29]

5.   Though defendants [Montgomery, Wims, Hugine, and the Grievance Committee] disrespected or defied the authority of related [A & M] regulations and that of [A & M] Board of Trustees and these four defendants are responsible for their violations and disrespect and defy [sic] of authorities, [A & M] Board of Trustees shall be charged with all corresponding duties, liabilities and responsibilities, per Ala. Code § 16-49-22.[30]

## III. DISCUSSION

### A.   Board of Trustees as Proper Party

Defendants assert that any of plaintiff's claims that are asserted against Alabama A & M University, as an entity, are not viable because the University itself is not capable of being sued.  Defendants are correct that the University's Board of Trustees, not the University itself, would be the proper party to any of plaintiff's claims.  *See* Ala. Code §§ 16-49-21 ("The Governor, by virtue of his or her office, and the trustees appointed from the several congressional districts of the state and the nation at large,

---

[29] *See* Section III(A), *infra*, for a discussion of these Alabama statutes.

[30] Doc. no. 21, at 1-2 (alterations supplied, emphasis in original).

pursuant to Section 16-49-20,[31] and their successors in office are constituted a body corporate under the name of Board of Trustees for Alabama Agricultural and Mechanical University."); 16-49-22 ("Such corporation shall have all the rights, privileges and franchises necessary to the promotion of the ends of its creation and shall be charged with all corresponding duties, liabilities and responsibilities."); 16-49-24 ("The board of trustees created by this chapter for Alabama Agricultural and Mechanical University shall have exclusive jurisdiction, power and authority with regard to the supervision, management and control of Alabama Agricultural and Mechanical University . . . .").

Even so, it is unclear which of the claims in plaintiff's Amended Complaint defendants believe to be asserted against the University. Plaintiff clearly states that the defendants named in his Amended Complaint are Trent Montgomery, Daniel Wims, Andrew Hugine, and the University's Grievance Committee. Neither the University itself nor its government Board of Trustees is separately named. Defendants have not addressed whether the Grievance Committee is a properly named defendant, and the court has no basis by which to consider that issue *sua sponte*.[32]

It is clear, nevertheless, that plaintiff's proposed new Claim 6, which is asserted

---

[31] Section 16-49-20 creates and dictates the membership of the A & M Board of Trustees. *See* Ala. Code § 16-49-20.

[32] As discussed in the following section, however, any § 1983 claims against the Grievance Committee are barred by Eleventh Amendment immunity.

against all current defendants *and the Board of Trustees*, is proper and should be allowed.  Accordingly, plaintiff's request for leave to amend his complaint to add Claim 6 will be granted.  Although defendants have not separately moved to dismiss Claim 6, the court will consider whether any of the arguments defendants asserted in their existing motion to dismiss also should be applied to Claim 6.

B.  **Eleventh Amendment Immunity**

Defendants assert that plaintiff's constitutional claims against them pursuant to 42 U.S.C. § 1983 are barred by Eleventh Amendment immunity.  The Eleventh Amendment states:  "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., amend. XI.  The Supreme Court long ago "extended the Amendment's applicability to suits by citizens against their own States." *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)[33] (citing, *e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)[34]).

---

[33] In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals when enacting the Americans with Disabilities Act of 1990 (ADA) and, accordingly, such suits are barred by the Eleventh Amendment.  *See also Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) (holding that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals when enacting the Age Discrimination in Employment Act of 1967 and, accordingly, such suits also are barred by the Eleventh Amendment).

[34] In *Hans v. Louisiana*, the Supreme Court held that the doctrine of sovereign immunity

The Eleventh Amendment has been construed in a manner that bars federal courts from hearing suits commenced by private litigants against non-consenting states for the retrospective recovery of money damages.  *See*, *e.g.*, *Garrett*, 531 U.S. at 363 ("Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States.  The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court.") (citations omitted); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73 (2000) ("[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States.") (alteration supplied).

Thus, the Eleventh Amendment thus is a limitation on the judicial power of United States courts under Article III of the Constitution, and federal courts accordingly "lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."  *McClendon v. Georgia Department of Community Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (citations omitted).

The Eleventh Amendment shields not only states and state officials sued in an official capacity from federal court actions, but also "state instrumentalities," *Regents*

---

barred a citizen from suing his own State in federal court, even when the basis of his claim was a federal question arising under the Constitution and laws of the United States. *See Hans v. Louisiana,* 134 U.S. 1, 15-18 (1890); *Alden v. Maine,* 527 U.S. 706, 727 (1999).

*of the University of California v, Doe*, 519 U.S. 425, 429 (1997), and other "arm[s] of the state."  *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977) (alteration supplied); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (holding that, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment") (alteration supplied).

The Eleventh Amendment also shields state officials sued under § 1983 in an "official capacity" from federal court actions seeking money damages for past actions allegedly in violation of the Constitution or federal statutes, because such claims are tantamount to a suit against the state itself; and, absent waiver or consent, the Eleventh Amendment bar remains intact.  *See McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (observing that, in such cases, "the state is considered the real party in interest because an award of damages would be paid by the state").

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.

*Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989); *see also Summit*

*Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest.").

Here, plaintiff has asserted constitutional claims against the A & M Board of Trustees, the A & M Grievance Committee, and three University officials: Trent Montgomery, a former Dean; Daniel Wims, the Provost and Vice President of Academic Affairs; and Andrew Hugine, the President of the University. Courts have consistently held that state universities and their Boards of Trustees are instrumentalities of the state for Eleventh Amendment purposes. *See, e.g., Harden v. Adams,* 760 F.2d 1158, 1163 (11th Cir. 1985); *Eubank v. Leslie,* 210 F. App'x 837, 844-45 (11th Cir. 2006); *Harris v. Board of Trustees of the University of Alabama,* 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012). By the same logic, this court concludes that the Grievance Committee, *as an entity*, also would be an instrumentality of the state. Thus, the A & M Board of Trustees and Grievance Committee enjoy Eleventh Amendment immunity from constitutional claims for money damages.[35] As a result,

---

[35] There is a well-recognized exception to Eleventh Amendment immunity for suits by private individuals against state officials seeking *declaratory relief* or *prospective injunctive relief* for *continuing violations* of federal law. *See Ex Parte Young,* 209 U.S. 123, 1599-60 (1908) (holding that a state official who has acted unconstitutionally may be sued in his official capacity for prospective injunctive relief because such a suit "does not affect the State in its sovereign or governmental capacity," and, an official who commits an unconstitutional act is deemed "stripped of his official or representative character"). There is no indication that the exception should apply in this case, because plaintiff has requested money damages, not declaratory or prospective injunctive relief.

plaintiff's Claim 3 — which is a § 1983 claim asserted solely against the A & M Grievance Committee — is barred.  Similarly, all § 1983 claims in the new Claim 6 that are asserted against the Board of Trustees also are barred.

The University officials named as defendants — Montgomery, Wims, and Hugine — also enjoy Eleventh Amendment immunity, insofar as plaintiff's constitutional claims are asserted against them in their *official* capacities.  Plaintiff did not specify in his Amended Complaint whether his claims were asserted against Montgomery, Wims, and Hugine in their official, or individual, capacities.  He also did not make any argument on that subject in his response to defendants' motion to dismiss.[36]  Even so, in the spirit of construing the *pro se* plaintiff's pleadings liberally, the court will interpret the Amended Complaint as asserting constitutional claims against the individual defendants in *both* their individual and official capacities.  *See Williams v. Bryant*, No. 1:08-CV-2336-RWS, 2009 WL 901008, *2 (N.D. Ga. Mar. 31, 2009).  The official-capacity claims are barred by the Eleventh Amendment, but the individual-capacity claims will remain, subject to defendants' other arguments for dismissal.

## C.    Failure to Satisfy Pleading Standards

Defendants also assert that, notwithstanding any issues about immunity or

---

[36] *See* doc. no. 20.

naming the proper party, plaintiff's claims also fail because they do not satisfy the pleading standard elucidated in the Supreme Court's *Twombly* and *Iqbal* decisions. According to defendants, "Plaintiff fails to allege *how* any actions taken by the [defendants] against Plaintiff give rise to *any* cause of action."[37]  The court does not agree with defendants that plaintiff has failed to provide sufficient factual detail to support his claims,[38] especially given the liberal standard for construing pleadings filed by *pro se* parties.

Moreover, the cases cited by defendants to support dismissal of plaintiff's claims are distinguishable.  *Cyprian v. Auburn University, Montgomery,* No. 2:10–cv–226–MEF, 2010 WL 1904284 (M.D. Ala. May 10, 2010), did not involve a *pro se* plaintiff, so the court in that case could apply a stricter standard to determine the sufficiency of the pleadings.  The second case cited by defendants, *Hampton v. Magnolia Haven Nursing Home,* No. 3:10cv910–WKW, 2011 WL 588354 (M.D. Ala. Jan. 19, 2011), did involve a *pro se* plaintiff, but the complaint in that case contained *much* less detail than Mr. Shi's complaint in this case.  In *Hampton*:

> Plaintiff's complaint consists of a fill-in-the-blank form which the court makes available for use by litigants, a copy of a "Notice of Right to Sue issued by the EEOC on July 30, 2010, and a copy of what appears

---

[37] Doc. no. 16 (defendants' brief in support of motion to dismiss), at 14 (emphasis in original, alteration supplied).

[38] This conclusion applies to the claims asserted in plaintiff's Amended Complaint, as well as his new Claim 6.

to be the first page of plaintiff's EEOC charge. (Doc. # 1).  In paragraph
4 of the complaint, regarding "[t]he acts complained of in this suit[,]"
plaintiff has written "Pregnancy Discrimination."  In paragraph 7, which
asks for the name and other information regarding the individual who
discriminated against the plaintiff, plaintiff has written her own name.
Paragraph 9 of the form begins with the language, "The nature of my
complaint, *i.e.*, the manner in which the individual(s) named above
discriminated against me in terms of the conditions of my employment,
is as follows:" and concludes with thirteen blank lines; on the first of
these lines, plaintiff has written "Pregnancy Discrimination." (Complaint,
¶¶ 4, 7, 9).  She states that the alleged discrimination took place at
"Magnolia Haven Nursing Home" on or about "August 4th, 2009," that
she "was laid off[,]" and that defendant's conduct was discriminatory
with respect to her "sex." (*Id.*, ¶¶ 5, 8, 10).

*Hampton*, 2011 WL 588354, at *1 (alterations in original, footnotes omitted).  The

district court held that the complaint did not satisfy the pleading standards set forth in

*Twombly* and *Iqbal* because it

provides no factual context for the adverse employment decision she
challenges in this court.  She does not allege that she was pregnant at or
near the time of the employment action.  Even if she had made such an
allegation, she also does not allege who made the decision that she
should be "laid off," or suggest that anyone making or influencing that
decision knew or suspected that she was pregnant.  While she draws a
legal conclusion that defendant has engaged in "pregnancy
discrimination," plaintiff's complaint — construed liberally — includes
no facts suggesting that she was treated differently from other employees
because of her pregnancy.

*Id.* at *2.

In contrast, in the present case, plaintiff has done much more than complete a

fill-in-the-blank form and state that he suffered discrimination.  He has submitted a

thirteen-page complaint with his claims clearly and separately delineated.  While the complaint could, no doubt, contain more factual detail, the court concludes that what plaintiff *has* stated is sufficient to "nudge[] [his] claims across the line from conceivable to plausible," especially considering plaintiff's *pro se* status.  *Twombly,* 550 U.S. at 570 (alterations supplied).  Accordingly, the claims that remain after defendants' Eleventh Amendment immunity has been considered will not be dismissed for failure to state a claim upon which relief can be granted.

### IV. CONCLUSION AND ORDERS

In accordance with the foregoing, it is ORDERED that plaintiff's response to defendants' motion to dismiss[39] be construed as a motion for leave to further amend his Amended Complaint and, as so construed, it is GRANTED.  Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff's Claim 3, asserted solely against the University Grievance Committee of A & M, is DISMISSED.  Any portions of Claim 6 that assert § 1983 claims against the Board of Trustees as an entity also are DISMISSED.  Finally, all § 1983 claims against the individual defendants, Trent Montgomery, Daniel Wims, and Andrew Hugine, in their respective *official* capacities are DISMISSED.

The parties are directed to proceed forthwith to discovery on all remaining

---

[39] Doc. no. 21.

claims pursuant to the Uniform Initial Order.[40]

DONE this 15th day of July, 2013.

_____
United States District Judge

---

[40] Doc. no. 18.