UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| XINGZHONG SHI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 5:13-cv-00327-JHE |
| ) | |
| ALABAMA A&M UNIVERSITY, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 27, 2014, the Court ordered Plaintiff to provide specific, detailed responses to Defendants' interrogatory responses.  (Doc. 89).  On September 10, 2014, Plaintiff filed such responses, along with a motion to compel Defendants to respond to certain discovery.  (Doc. 90). Defendants have submitted opposition to Plaintiff's motion.  (Doc. 92).

**I. Procedural History**

Now that the parties have filed evidence with the Court of their previously off-the-record email discussions and discovery responses, the Court can set out a clearer description of the procedural history of this discovery dispute.  In August 2013, Plaintiff served Defendants with requests "for documents and explanations" containing what appear to be twenty requests for production, (doc. 39), to which Defendants responded on September 27, 2013, (docs. 92-2 & 92-3).  In May 2014, Plaintiff served Defendants with two additional sets of discovery, "Plaintiff's First Interrogatories to Defendants" and "Plaintiff's first Request for Production of Documents." (Doc. 63; doc. 92-1 at 7-11).

On June 4, 2014, the Court and the parties held a hearing and discussed how to handle Defendants' objections to Plaintiff's deposition notices, and the parties agreed Plaintiff could

1

serve interrogatories on Defendants with the intent of determining whether he could get the information he needed without the time and expense of depositions. (Doc. 86). On June 5, 2014, the Court entered an order giving Plaintiff until June 19, 2014, to serve interrogatories on Defendants and giving Defendants until July 3, 2014, to serve responses on Plaintiff. (Doc. 73).

Based on the evidence now before the Court, it seems Plaintiff misunderstood these deadlines to be for him to respond to Defendants' previously served discovery, (*see* doc. 87 at 5), and for Defendants to respond to his previously served discovery, (*see* doc. 81 at ¶ 3; doc. 92-1 at 2). On June 27, 2014, Defendants filed a notice of Plaintiff's non-compliance asserting, although Plaintiff had previously filed interrogatories, he had not filed his responses as ordered in the Court's June 5 Order. (Doc. 75). Plaintiff responded, stating Defendants' assertion was not true because he emailed Defendants' attorneys on June 19, 2014, "following the court order issued on June 5, 2014." (Doc. 76 at ¶ 1). Without access to the parties' out-of-court discussions and discovery documents, this appeared to indicate Plaintiff had responded to the Court's order by simply reusing previous interrogatories.[1] On June 30, 2014, the Court issued an order stating any issues would be dealt with at the July 14, 2014 hearing and "Defendants' deadline to respond to any interrogatories Plaintiff may have served pursuant to that order remains July 3, 2014." (Doc. 77 at 1).

On July 4 and 5, 2014, Plaintiff served another set of requests for production and another set of interrogatories. (Doc. 92-1 at 1-6; *id.* at 12-19).

The morning of the July 14 hearing, "out of an abundance of caution," Defendants sent Plaintiff unsigned responses to his previous discovery. (Doc. 87 at 12-13). Both sides believed

---

[1] Adding to the misunderstanding, Defendants were also objecting to the fact Plaintiff's May discovery requests were Defendants' discovery requests to Plaintiff sent back to them with the party names reversed. (Doc. 87 at 6).

the other had not complied with the June 5 Order, but, because responses had been served and wanting to move this case through the end of discovery, the Court proposed Defendants serve signed responses of what they had already sent Plaintiff and Plaintiff review the responses and bring any issues with Defendants' responses and objections to the Court's attention.  (*Id.* at 10). The parties agreed to do so.  (*Id.* at 14).

Plaintiff responded by merely stating he did not "accept" Defendants' responses because Defendants had missed the deadline of July 3, 2014, to respond.  (Doc. 81 at ¶ 3).  At the August 12, 2014 hearing, Plaintiff asked about "more questions in exchange for the deposition," apparently not understanding the Court had been treating the interrogatories the parties had been arguing over for more than a month as those questions.  (Doc. 88 at 20).  After the hearing, the Court issued an order giving Plaintiff a deadline to give a detailed response to Defendants' interrogatory responses.  (Doc. 89).

On September 10, 2014, Plaintiff responded with the current motion, including discussion of each of the issues he had with Defendants' responses to his interrogatories and requests for production from August 2013 and May 2014.  (Doc. 90).  Between Plaintiff filing this motion and Defendants filing their opposition to it, Plaintiff finally served Defendants with the interrogatories instead of depositions the Court understood to have been at issue all along.  (Doc. 90 at 46; doc. 92 at 17).

## II. Discussion

**A.  Motion to Compel Responses to Plaintiff's Previous Discovery**

As a threshold issue, it appears Plaintiff has failed to comply with Rule 37's requirement to confer with the other party before filing a motion to compel.  (Doc. 90; doc. 92 at 8).  However, after considerable back and forth on this issue, the Court ordered Plaintiff to respond

to Defendants' responses (as he has finally done), (doc. 89), so Plaintiff's motion can hardly be said to be the usual Rule 37 motion contemplated by the Rules.[2]  Because discovery has ended (except to the extent the Court may order as a result of Plaintiff's motion) and the Court ordered the responses in question, the Court gives some leeway on this point, but no additional discovery will be allowed where the required conference would likely have resolved the issue.

In Plaintiff's motion, he first seeks to compel Defendants to supplement their responses to his August 2013 requests for documents and explanations, his May 2014 requests for production of documents, and his May 2014 interrogatories.

**1. August 2013 Requests for "Documents and Explanations"**

Plaintiff asserts "Defendants provided zero (0) of the twenty (20) requested documents or explanations to Plaintiff."  (Doc. 90 at 7).  Defendants argue they provided several documents responsive to several of Plaintiff's requests, as well as 320 pages of Initial Disclosure documents and twenty-two exhibits at his deposition.  (Doc. 92 at 9).  They further state that, where they did not have particular documents requested, they indicated such in their responses.  (*Id.*).

After reviewing the requests and responses, (doc. 90-3; docs. 92-2 & 92-3), Plaintiff is not entitled to any further supplementation on these requests.  Regarding requests, numbered 1, 3, 9, 10, 12, 13, 14, 15, 18, 19, and 20, Plaintiff asserts Defendants have not produced documents to support various statements or decisions by various defendants.  (Doc. 90 at 7-8, 11-18).  However, each of these requests is merely a statement of fact for which it is not obvious what documents are being requested.  (*Id.*).  Even so, Defendants attempted to produce documents as to several of these.  (*See, e.g.*, doc. 92 at 7-8).  If Plaintiff believed these documents to be not

---

[2] This reasoning would not apply to the various requests for production because the Court only ordered responses to interrogatories.  (Doc. 89).  Nevertheless, the issue is moot because Plaintiff is not entitled to further supplementation of his requests for production.  *See* discussion below.

4

fully responsive, it was his duty under Rule 37 to confer with Defendants and, if still unsatisfied, to move to compel further responses. *See* Fed. R. Civ. P. 37(a)(1). If Plaintiff had done so, this apparent miscommunication may have been resolved without passing multiple discovery deadlines and getting the Court involved.

Regarding requests numbered 2, 4, 5, 6, 7, and 8, Defendants stated, after reserving certain objections, that they had no documents in their possession that are responsive to the request. (Doc. 90-3 at 4-6). Plaintiff focuses instead on the objections (asking the Court if the documents are protected by the privileges asserted) or on his own belief or speculation about the existence of the documents. (Doc. 90 at 8-11). If the documents do not exist or are not in Defendants' possession or control, they cannot produce them. If Plaintiff believed responsive documents existed and were in Defendants' possession, he was obligated to confer with Defendants and clear up any misunderstandings.

Regarding request number 11, Plaintiff acknowledges it "is a hypothetical question," and he does not appear to seek any relief from the Court on this request. (Doc. 90 at 13). Regarding request number 17, Plaintiff acknowledges Defendants produced the Alabama A&M University ("AAMU") Faculty/Administrative Staff Handbook but asserts, because they did not "specify the chapter number, section number, page number, etc.," their response is "no more than NO response." (*Id.* at 16). Clearly, it is more than no response. Moreover, Plaintiff seeks the same answer in his new interrogatories to Defendants. (Doc. 92-4 at 155). Lastly, request number 16 appears it may have been intended as an interrogatory. (Doc. 92-2 at 10). Defendants treated it as a request for production and produced the email in which Montgomery addressed the issue. (*Id.* at 10-11, 19). Plaintiff asserts he was not seeking the email but a list of issues the email indicated had already been resolved. (Doc. 90 at 15). The requested answers are not relevant to

any of Plaintiff's claims, and, to the extent he believed their answer unresponsive, he was obligated to confer with Defendants and clear up any misunderstandings.

Plaintiff is not entitled to compel Defendants to respond further to any of these discovery requests.

   **2. May 2014 Requests for Production of Documents**

Plaintiff titled his next set of requests his "first" requests for production of documents, (doc. 61), but, in light of the requests made in August 2013, they were clearly a second set of requests for production. The parties' Rule 26 report stated they had agreed to a maximum of thirty requests for production to any other party. (Doc. 36 at 6). The August 2013 and May 2014 requests for documents were both directed at all of the Defendants, and the Defendants properly responded to the first thirty requests propounded: the twenty from August 2013 and the first ten from May 2014.

As for the first ten responses to the May 2014 requests, Plaintiff accepts the responses for numbers 5 through 10. (Doc. 90 at 24-25). Of the first four, his response is that Defendants have provided none of the documents requested in August so their objection that they have already provided documents responsive to the request cannot be valid. (*Id.* at 22-24). Defendant, however, have provided several documents responsive to the August requests, (docs. 92-2 & 92-3), along with hundreds of pages of Initial Disclosures, (doc. 90 at 1-2; doc. 92 at 9 n.5). Plaintiff's arguments are insufficient to warrant an order compelling Defendants' to supplement their responses.

   **3. May 2014 Interrogatories**

Plaintiff has no issue with Defendants' responses to interrogatories numbered 1, 4, 5, 7, and 8. (Doc. 90 at 32, 35-36, 38). Regarding interrogatories numbered 2, 9, and 10 (seeking

Defendants' pay rates and benefits, their past addresses, their social security numbers, and information about their spouses), (*id.* at 32-34, 39),[3] this information is irrelevant to his claim, and the Court will not compel Defendants to release it.  Regarding interrogatory number 3, Plaintiff may be correct Defendant Hugine necessarily must know about the facts of the claim asserted against him, but neither that nor Plaintiff's emails to Hugine, Barbara Cady, and Chris Enyinda entitles Plaintiff to further responses from Defendants on this question.

Regarding interrogatory number 6, Defendants have provided no reason why they failed to provide the other information Plaintiff seeks from Defendants relating to the twenty lawsuits they have been involved with over the last ten years, that is, other than to say he could get the rest of it from what was provided. (*See* doc. 92 at 7).  They do not assert providing such details would have been burdensome, nor do they explain their general objection it is irrelevant. (*See id.*; doc. 90-1 at 12).  Defendants must provide the requested information.

Lastly, regarding interrogatories 11 and 12 (seeking the identities of trial and expert witnesses), Defendants' object to Plaintiff "attempt[ing] to usurp the Court's scheduling order" with a question Defendants admit they served on him. (Doc. 92 at 7).  Defendants merely assert they have not usurped the Court's scheduling order and do not explain why Plaintiff asking the question is usurpation and Defendants asking it is not.  Nothing in the scheduling order states the parties cannot use their limited discovery opportunities to request a non-final list of witnesses. (Docs. 43 & 52).  Furthermore, the deadline for expert witness reports has already passed.  (*Id.*) (never explicitly extending the expert witness deadline but, in any event, setting it before the close of discovery).  Plaintiff is entitled to this information, and Defendants must provide it.

---

[3] Plaintiff's interrogatories were identical copies of Defendants' interrogatories to him with their names replacing his.  (Doc. 75 at 2 n.1; doc. 87 at 6).  Plaintiff has not disputed this but merely asserts he should be able to ask Defendants the same questions they asked him. (Doc. 87 at 9-10).

**B. Motion to Compel Responses to the Interrogatories Instead of Depositions**

After filing his response to Defendants' objections to his earlier discovery, Plaintiff finally served Defendants with his interrogatories instead of depositions. (Doc. 90 at 46; doc. 92 at 17). Defendants assert they should not be required to respond to these interrogatories because they are untimely, they exceed the parties' agreed upon limit, and they are so incoherent "that they are impossible to formulate a response thereto." (Doc. 92 at 17-18).

First, although it is true Plaintiff's interrogatories are untimely, (*see* doc. 73) (setting a June 19, 2014 deadline to serve interrogatories instead of depositions), it has also become clear Plaintiff's failure resulted from a misunderstanding arising from his use of English as a second language, and the Court is inclined to give him one last bit of latitude. Second, although late, these are clearly the interrogatories the parties agreed to and the Court ordered in June, (doc. 73), so they are not subject to the parties' or the rules' limitations. Defendants have a point, however, when it comes to the interrogatories' drafting. Many of the questions are vague; seek irrelevant or, at this point, unnecessary information; and would be difficult to formulate a proper and unambiguous answer, and the Court will not require Defendants to respond to all of them.

Having reviewed the interrogatories in their entirety, Defendants are required to respond to the following:

**To Montgomery:**

[1] "Did you follow AAMU policies and regulations for appointing Dr. Atluri as the interim chair in Dec 2010?" (Doc. 92-4 at 76).

[2] "Can you identify any false statements from the following statements . . . ? If yes, explain.
    "a) In Dec 2010, Dr. Montgomery appointed Venkata Atluri as the interim chairman for the then Computer Science Department in the School of Engineering and Technology (SET,) violating AAMU's regulation for a dean to appoint an interim chair, as indicated above.
    "b) In summer 2008, Dr. Venkata Atluri illegally changed a grade of a student in

8

a class of Dr. Muhammad Ghanbari's. That change was reversed later after Dr. Ghanbari complained about Dr. Atluri's power abusing. . . ." (*Id.* at 89).

[3] "Can you identify any false statements from the following statements, with comparisons among Dr. Venkata Atluri, Dr. Jian Fu and Plaintiff? If yes, explain." (*Id.* at 89-90). All of the statements in (a)(1)-(6), (b)(1)-(5), and (c)(1)-(4) of this interrogatory are straightforward statements of fact to which a true/false answer with explanation would not be unfairly ambiguous.

[4] "[D]o you agree that AAMU actually hired Plaintiff as a full time employee with all same benefits as those for other full time faculty members for fall 2011 semester?" (*Id.* at 93).

[5] "Are a), b), and c) below all true? If not, explain." As with [3] above, all three statements in this interrogatory are straightforward statements of fact to which a true/false answer with explanation would not be unfairly ambiguous. (*Id.* at 94).

[6] "Can you list any evidences that prove Plaintiff's serious violation of AAMU policies and/or regulations in fall 2011 that make Plaintiff's employment deserve termination?" (*Id.* at 95).

[7] "Can you identify any false statement(s) from the following? If yes, explain." (*Id.* at 95-96). The statements in (2), (3), and (4) are relatively straightforward statements of facts relevant to a discrimination claim to which a true/false answer with explanation would not be unfairly ambiguous.

[8] "You placed Plaintiff on 'Administrative Leave with Pay' in the name of the University, because you received 'multiple reports' concerning Plaintiff's behavior at the college wide meeting on 8/15/2011. Did you have the authority to do so? Can you identify related AAMU policy or regulations, Alabama statutes and US statutes that allow you to do so? Whom did you talk to for the decision? Who originated the decision?" (*Id.* at 96-97).

**To Wims:**

[1] "Does [Plaintiff's January 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying? If yes, cite related AAMU's policies and justify your answer." (Doc. 92-4 at 106-07).[4]

[2] "Does [Plaintiff's March 24, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying? If yes, cite related AAMU's policies and justify

---

[4] These first nine interrogatories to Wims and Hugine referring to whether certain emails violate the university's spamming and cyber-bulling policies are relevant to the extent Defendants relied on those emails and potential policy violations for Plaintiff's discipline and termination.

9

your answer." (*Id.* at 108-09).

[3] "Does [Plaintiff's June 24, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 109-11).

[4] "Does [Plaintiff's June 30, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 112-13).

[5] "Does [Plaintiff's July 27, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 113-14).

[6] "Does [Plaintiff's August 9, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 114-15).

[7] "Does [Plaintiff's August 15, 2011 email to Montgomery] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 115-18).

[8] "Does [Plaintiff's October 13, 2011 email to Wims] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 118-19).

[9] "Do [Plaintiff's emails to Wims and Hugine on October 13 and 20, 2011 and November 4, 2011] violate AAMU's policies against spamming and cyber-bullying?  If yes, cite related AAMU's policies and justify your answer." (*Id.* at 119-20).

[10] "Can you identify any false statements from the following statements . . . ?  If yes, explain.
    "a) In Dec 2010, Dr. Montgomery appointed Venkata Atluri as the interim chairman for the then Computer Science Department in the School of Engineering and Technology (SET,) violating AAMU's regulation for a dean to appoint an interim chair, as indicated above.
    "b) In summer 2008, Dr. Venkata Atluri illegally changed a grade of a student in a class of Dr. Muhammad Ghanbari's. That change was reversed later after Dr. Ghanbari complained about Dr. Atluri's power abusing." (*Id.* at 120-21).

[11] "Can you identify any false statements from the following statements, with comparisons among Dr. Venkata Atluri, Dr. Jian Fu and Plaintiff?  If yes, explain." (*Id.* at 121-22).  All of the statements in (a)(1)-(6), (b)(1)-(5), and (c)(1)-(4) are straightforward statements of fact to which a true/false answer with explanation would not be unfairly ambiguous.

10

[12] "Are a), b), and c) below all true?  If not, explain."  (*Id.* at 125-26).  All three statements are straightforward statements of fact to which a true/false answer with explanation would not be unfairly ambiguous.

[13] "Can you list any evidences that prove Plaintiff's serious violation of AAMU policies and/or regulations in fall 2011 that make Plaintiff's employment deserve termination?"  (*Id.* at 127).

[14] "Montgomery placed Plaintiff on 'Administrative Leave with Pay' in the name of the University, because he received 'multiple reports' concerning Plaintiff's behavior at the college wide meeting on 8/15/2011.  Did he have the authority to do so?  Can you identify related AAMU policy or regulations, Alabama statutes and US statutes that allow him to do so?  Did you talk to him for the decision?  Who originated the decision?"  (*Id.* at 127-28).

[15] "Can you identify any false statement(s) from the following?  If yes, explain."  The statements in (2), (3), and (4) are relatively straightforward statements of facts relevant to a discrimination claim to which a true/false answer with explanation would not be unfairly ambiguous.  (*Id.* at 128).

[16] "How did you make the decision to terminate Plaintiff's employment in Dec 2011 for some possible violations committed by Plaintiff's [sic] in that fall 2011 semester (who was on a non-tenure track position and who was supposed to have one semester employment term, ) and whom did you talk to for the decision?  Who originated the decision?  List all AAMU regulations and policies, Alabama statutes and US statutes that allow you to do so."  (*Id.* at 129).

[17] "Please list the detailed process for you to make the decision to not renew Plaintiff's employment, including dates, times, places, meetings, (oral and written) conversations, name of all people who were involved in that decision."  (*Id.*).

**To Hugine:**

Except for the interrogatories to Hugine numbered 13-15, all of the questions to Hugine are identical to those served on Wims and are answerable to the same degree.  As for the last three, Hugine is required to answer only the following:

[10]  "Can you identify related US statue(s) or regulation(s), Alabama statute(s) or regulation(s) and AAMU's policies or regulation(s) that guide, allow and/or support your decision to re-organize AAMU, dis-allowing any discussion among lower level AAMU administrators, faculty and staff?"  (Doc. 92-4 at 154).

11

**C. Remaining Motions and Requests**

All of Plaintiff's remaining motions, (doc. 90 at 45), are **DENIED**. His motion 4, seeking to have the undersigned "provide[] answers to the questions as stated in this document, referring to Plaintiff's comments, etc.," is due to be denied because, to the extent the questions are relevant to his motion, they are answered in this Order. His motion 5, asking the Court to compel Defendants to provide answers to the questions in his motion, is due to be denied because it essentially seeks to propound, within his motion to compel, additional discovery to which he is not entitled. Lastly, his motion 7, seeking to have the Court send him an email with the e-filed documents he has previously requested, is due to be denied again because he does not, as he asserts, have an "unalienable right for the free copy of the e-filed documents," (doc. 90 at 46). As previously explained, he was granted a situation-specific exception to the general rule because he was in China, (doc. 11), but, once he returned, he was once again subject to the same rules as everyone else, (doc. 49).

Lastly, Plaintiff asks the Court if it will "also consider to take the following actions." (Doc. 90 at 46). First, he seeks an order for the parties to resolve this case via mediation. (*Id.*). Plaintiff has repeatedly moved for such an order, and the Court has repeatedly denied it. It is **DENIED** again. Second, Plaintiff seeks summary judgment based on the evidence and statements in his motion. (*Id.*). To the extent Plaintiff intends this motion as one for summary judgment, it does not comply with Appendix II to the Initial Order, (doc. 18 at 12-18), and is therefore **DENIED without prejudice to his right to refile** a motion for summary judgment that complies with Appendix II and the federal rules. Plaintiff also seeks an order "scheduling [] the remaining issues, including witnesses, jury selection, pre-trial, etc." (Doc. 90 at 46). As this matter is not yet even ready for dispositive motions, much less trial, this request is **DENIED as**

**premature**.

### III. Conclusion

Plaintiff's motions 1, 2, 4, 5, and 7 are **DENIED**, and his motions 3 and 6 are **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Defendants have **fourteen (14) days from the date of this order** to respond to Interrogatories 6, 11, and 12 of the May 2014 Interrogatories and to the interrogatories instead of depositions set out in Section II.B. above.  Plaintiff's three separately numbered motions/requests are also **DENIED**.  Except for the above-ordered responses, discovery is **CLOSED**.  The parties have **thirty (30) days from the date the responses are due** to file any dispositive motions.

DONE this 21st day of November 2014.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE